IN THE CIRCUIT COURT OF BALTIMORE CITY, MARYLAND

| | |
|---|---|
| TERRY MASSEY<br>4104 West Coldspring Lane<br>Baltimore, MD 21215<br><br>    Plaintiffs<br><br>vs.<br><br>ERNEST LEWIS<br>1348 Newton Street, NW<br>Washington, DC 20010<br><br>And<br><br>MICHAEL K. LEWIS<br>1204 Heritage Hills Drive<br>Upper Marlboro, MD 20774<br><br>And<br><br>IN THE HOUSE TECHNOLOGY, INC.<br>1204 Heritage Hills Drive<br>Upper Marlboro, MD 20774<br>    SERVE ON:<br>    CHERYL LYNN BROOKE<br>    Resident Agent<br>    1204 Heritage Hills Drive<br>    Upper Marlboro, MD 20774<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil No.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Terry Massey, by and through her attorneys, Michael Morin and Phillip

Robinson and Nevett Steele, Jr. and CIVIL JUSTICE, INC., and Scott Borison and the LEGG

LAW FIRM, LLC. hereby sues Ernest Lewis, Michael K. Lewis, and In the House Technologies,

Inc., and states as follows:

## I.     PARTIES

### A.     Plaintiff



At all times pertinent to this action Ms. Terry Massey ("Ms. Massey") resided at 4104 West Coldspring Lane in the City of Baltimore, Maryland 21215 ("the Property").

### B.     The Co-Conspirators

2.    Conspirator Ernest Lewis resides at 1348 Newton Street, NW in Washington, DC  20010. Upon information and belief, Ernest Lewis is the legal brother of co-conspirator Michael K. Lewis.

3.    Conspirator Michael K. Lewis resides at 1204 Heritage Hills Drive in Upper Marlboro, MD  21774. Upon information and belief, Michael Lewis is married to Cheryl Lynn Brooke a principal and agent of Conspirator In the House Technologies Inc.  Upon further information and belief, Michael Lewis is the legal brother of co-conspirator Ernest Lewis.

4.    Conspirator In the House Technology Inc. is a Maryland based corporation with offices at 1204 Heritage Hills Drive in Upper Marlboro, MD  21774.  Upon information and belief and at all times referenced herein, Michael K. Lewis and Cheryl Lynn Brooke are the principals behind In the House Technologies Inc. who also interacted with the Plaintiff in this matter.

5.    Not named as a party but as an agent of conspirators Michael K. Lewis, Ernest Lewis, and In the House, MKL/Starr Productions, Inc. is a Maryland Corporation who according to SDAT has forfeited its charter to do business in the state of Maryland as of October 7, 2003.  Upon information and belief MKL/Starr Productions, Inc.'s offices are located at 4801 Copley Lane in Upper Marlboro, Maryland 20772.

2

## II. BACKGROUND

6.    This action is brought by a consumer homeowner seeking relief against the Defendants
who have engaged a concerted and orchestrated effort to take advantage of her through
illegal acts in violation of state laws such as the Protection of Homeowners in
Foreclosure Act (PHIFA), MD. CODE ANN., REAL PROPERTY § 3-301 *et seq.*, and breach
of fiduciary duties.

7.    The scam began through the solicitation of consumers, including Ms. Massey, through
advertisements by Michael Lewis, MKL/Starr Productions, Inc., and/or In the House
Technologies, Inc. ("In the House") under the guise that they can help people get out of
debt, save their homes, and increase their income through a pyramid like scheme.

8.    The consumer is bilked out of fees and lost equity paid to the various entities.

9.    Another phase of the scheme includes foreclosure rescues that are in reality predatory
real estate practices of several foreclosure rescue consultants involved including
Conspirators Ernest Lewis, Michael K. Lewis, and In the House ("Foreclosure Rescue
Consultants").

10.   The scheme relies on the participation of known and unknown third parties who knew
that Ms. Massey was entitled to certain protections under PHIFA, but actually did not
inquire further upon this notice, and nor did its principals investigate further to determine
whether Foreclosure Rescue Consultants complied with PHIFA.

3

11.    The Defendants' partnership is for the sole purpose to charge customers with fees for services not performed at the expense of Ms. Massey and in circumvention of the provisions of Maryland's Protection of Homeowners in Foreclosure Act ("PHIFA").

### III.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to MD Code Ann., Ct. & Jud. Proc. §§ 6-201, 6-102 and 6-103.

13.    Venue is proper in this Court since a substantial part of the events giving rise to claims herein occurred in the City of Baltimore and involve real property within the City and the conspirators all systematically and continually transact business in the City of Baltimore.

### IV.    FACTS

14.    Sometime in the Spring of 2006, Ms. Massey became a member of Michael K. Lewis & Associates' pyramid like scheme which required her to pay certain monthly member fees. As a member she needed to perform several functions including but not limited to the following:

   a.    She needed to adopt the "MKL Budget Diet"

   b.    She needed to commit to a bi-weekly budget session

   c.    She needed to In the House and pay a fee of $40 for In the House to help register a trade name and tax ID

15.    On or about June 30, 2006, a foreclosure was docketed against Ms. Massey's interest in the Property as reflected in the Circuit Court for Baltimore City in Case No. 24O06001515.

4

16.   On or about July 29, 2006, Ms. Massey entered into an illegal foreclosure rescue contract(s) with Conspirators In the House, Ernest Lewis, Michael K. Lewis, and MKL/Starr Productions, Inc. ("Foreclosure Rescue Consultants") who promised to help save the Property from foreclosure.

17.   The Foreclosure Rescue Consultants required Ms. Massey to sign several contracts and a "Mandatory Lease Back Agreement" but did not provide her copies of any documents.

18.   At the time Ms. Massey entered into several contracts with the Foreclosure Rescue Consultants, it was represented to Ms. Massey that she would be provided copies of her contracts at a later time. Ms. Massey has not received any copies of these documents through the filing of this Complaint.

19.   Believing that the Foreclosure Rescue Consultants were acting in her best interests, Ms. Massey agreed to use their consulting services and signed several contracts and other documents with them at their offices located within the Quality Inn located on Security Blvd. in Baltimore, Maryland 21215.

20.   At the time of Ms. Massey's execution of her contracts with the Foreclosure Rescue Consultants, it was represented to her and other consumers in similar positions that the conspirators would obtain new mortgages to pay off Ms. Massey's and other consumers' defaulted and delinquent mortgages using the credit of Conspirator Ernest Lewis.

21.   As part of their services to Ms. Massey and effort to save her home from foreclosure, the Foreclosure Rescue Consultants offered Ms. Massey a Mandatory Lease Back Option with option to purchase back the Property at the weekly rental rate of $300 or $1,200 per month commencing in September 2006—this amount was $400 more than her already delinquent mortgage payment.

5

22.   As part of their services to Ms. Massey and further effort to save her home from
      foreclosure, the Foreclosure Rescue Consultants pitched the "Ernest Lewis Story"
      whereby they would use Ernest Lewis' high credit score to obtain a new mortgage on the
      Property at a lower rate than Ms. Massey currently had. In fact this representation was
      repeated to Ms. Massey on frequent basis.

23.   Even though Ms. Massey provided the Foreclosure Rescue Consultants copies of her
      most recent rent pay stubs, they recklessly failed to verify that Ms. Massey had or would
      have a reasonable ability to pay the proposed lease payments and/or subsequently replay
      the reconveyance price of the Property within the option term of the repurchase
      agreement in the lease.

24.   None of the Foreclosure Rescue Consultants or any other party has provided Ms. Massey
      with a copy of the Mandatory Lease Back Agreement.

25.   The lease terms and repurchase agreement required by the Foreclosure Rescue
      Consultants as part of Ms. Massey's foreclosure conveyance were both unfair and
      commercially unreasonable.

26.   The Foreclosure Rescue Consultants told Ms. Massey that they needed more time to
      secure the funding necessary to save her house and the only way to do this was to file for
      bankruptcy to "slow up" the foreclosure sale.

27.   Conspirator In the House, prepared and filed on Ms. Massey's behalf a Chapter 13
      petition solely to stall or prevent the foreclosure sale of the Property that had been
      scheduled for August 10, 2006.

28. At about the same time the Foreclosure Rescue Consultants applied for a new mortgage to help Conspirator Ernest Lewis acquire the Property and strip away as much of the Property's equity as part of the scheme.

29. At the direction of Conspirator Ernest Lewis's mortgage broker, an appraisal was performed on the Property, which determined the fair market value of the Property significantly exceeded the defaulted sum due, by Ms. Massey.

30. When Conspirator Ernest Lewis's mortgage broker had obtained a loan commitment from a mortgage lender, and his title company was prepared to conduct the settlement of the Property's foreclosure reconveyance from Ms. Massey to Conspirator Ernest Lewis, In the House prepared and filed a Motion to Dismiss Ms. Massey's bankruptcy case on September 8, 2006. See Document 21 in Case No. 06-14497-RAG.

31. None of the Foreclosure Rescue Consultants ever provided Ms. Massey a "Notice of Right to Cancel Transfer of Deed or Title" for her retention and records, as they were required to do so.

32. A complete formal settlement of the Property did not take place before the transfer of the Ms. Massey's interest in the Property to Conspirator Ernest Lewis since Ms. Massey has been given no records of the foreclosure rescue services and settlement through the filing of this complaint.

33. As part of the incomplete settlement and transfer of the Property from the Ms. Massey to Conspirator Ernest Lewis, a title search, abstract, and title examination was performed, for the benefit of Ernest Lewis' mortgage lender, by its agent(s) which revealed that Ms. Massey was facing a pending foreclosure or had recently faced a foreclosure within a matter of weeks.

7

34.     The incomplete settlement and transfer of the Property from Ms. Massey to Conspirator
        Lewis was conducted but upon the filing of this complaint does not yet appear to be filed
        in the  land records of Baltimore City, Maryland as of the filing of this complaint.

35.     To finance his scheme to strip away and illegally acquire Ms. Massey's equity in the
        Property, Conspirator Ernest Lewis apparently mortgaged the Property with Millennium
        Bank, NA through an application with his mortgage broker.

36.     Millennium Bank, NA approved Conspirator Ernest Lewis' mortgage loans despite its
        agent's, knowledge of and the existence of a recently filed foreclosure action against Ms.
        Massey and her entitlement to the protections offered by PHIFA.

37.     Despite the knowledge of the foreclosure action against Ms. Massey docketed on or about
        June 30, 2006, neither Millennium nor its agents investigated further to determine the
        true nature of the Foreclosure Rescue Consultants' scheme or if Conspirator Ernest Lewis
        had complied with the Maryland Protection of Homeowners in Foreclosure Act (PHIFA),
        MD. CODE ANN., REAL PROPERTY § 3-301 *et seq*., and therefore Millennium is not a bona
        fide lender.

38.     Conspirator Ernest Lewis transferred, purported to transfer, or encumbered his interest in
        the Property with Millennium and/or others before Ms. Massey's right to rescind or
        cancel the transaction pursuant to PHIFA had expired.

39.     After the incomplete settlement and transfer of the Property from Ms. Massey to
        Conspirator Ernest Lewis on or about September 13, 2006, Michael Lewis further
        required that Ms. Massey to pay him a fee of over $30,000 for the foreclosure consultant
        services that were allegedly performed on her behalf pursuant to the foreclosure
        consulting contract but in actually were illegally performed to her detriment and loss.

8

40.   At the September 13, 2006 settlement, Ms. Massey asked Conspirator Ernest Lewis for
      her cash proceeds and a copy of the "mandatory leaseback agreement" she had been
      required by him to sign.  Conspirator Ernest Lewis told Ms. Massey that he had other
      people waiting and he could not comply with her request but that Ms. Massey would be
      given the requested information when she met with his brother Conspirator Michael K.
      Lewis.

41.   The Bankruptcy Court dismissed Ms. Massey's bankruptcy petition on or about
      September 20, 2006—a week after Cornerstone had conducted the incomplete settlement
      and transfer of the Property from Ms. Massey to Conspirator Ernest Lewis.

42.   The deed by Ms. Massey conveying her interest in the Property to Conspirator Ernest
      Lewis is void *ab initio* since Ms. Massey's bankruptcy had not yet been dismissed and
      she did not have the permission of the Bankruptcy Court to convey her interest in the
      property to anyone.

43.   On or about September 27, 2006, Michael K. Lewis came to Ms. Massey's place of
      employment and required her to sign-over the proceeds from the real estate transaction, a
      sum of over $30,000, to him for alleged services he provided to her in saving her home.
      Michael K. Lewis did not provide Ms. Massey any documents as had been promised by
      his brother.

44.   Sometime after September 27, 2006, Michael K. Lewis did provide Ms. Massey with a
      $5,000 "gift" of the proceeds she was entitled to and Michael K. Lewis represented that
      "this is all there is and it's too bad there is no more."

45.   When Ms. Massey could no longer afford the unreasonable lease terms that exceeded her
      final ability, Conspirator Ernest Lewis initiated a Failure to Pay Rent action against Ms.

9

Massey on or about October 30, 2006 in the District Court of Maryland for Baltimore
City in a matter docketed by Case No. 2006405227.

 46. On November 7, 2006, the Honorable Devy Patterson Russell dismissed Case No.
2006405227 for failure to state a claim upon which relief could be granted.

47. In response, Conspirator Ernest Lewis refilled a nearly identical Failure to Pay Rent
action against Ms. Massey on or about November 9, 2006 in the District Court of
Maryland for Baltimore City.

48. The Foreclosure Rescue Consultants required unfair and unreasonable lease terms as part
of the foreclosure reconveyance.

49. Within her right of rescission pursuant to PHIFA, Ms. Massey recorded in the land
records of Baltimore City on or about October 11, 2006 a document canceling the
transfer of the Property and Foreclosure Rescue Consultants entitled "Notice of
Revocation of Power of Attorney and Rescission and Cancellation of foreclosure
Consultant Contract and foreclosure Reconveyance Deed." The document is recorded at
Book 08452 and Pages 0729-0730.

50. The acts and representations of the Foreclosure Rescue Consultants described above
deceived and tended to deceive Ms. Massey, a homeowner, pursuant to the PHIFA and
violated several express prohibitions of the PHIFA. These false representations and
violations to Ms. Massey include, but are not limited to, the following:

    a. The Foreclosure Rescue Consultants promised to help Ms. Massey save her home;

    b. Ms. Massey signed papers for the purpose of helping her save her home;

    c. Ms. Massey needed to sign a lease of her own property in connection with the
Foreclosure Rescue Consultants foreclosure rescue;

10

d.  The Foreclosure Rescue Consultants recklessly verified Ms. Massey's reasonable
    ability to pay the terms of the lease and proposed repurchase price within the term
    of the option to repurchase;

e.  The Foreclosure Rescue Consultants failed to complete the formal settlement
    before transferring interest was affected;

f.  The Foreclosure Rescue Consultants failed to provide Ms. Massey the required
    statutory disclosures and copies of all agreements and contracts executed with
    her;

g.  The Foreclosure Rescue Consultants concealed from Ms. Massey their true intent
    and plan;

h.  The Foreclosure Rescue Consultants represented or held themselves out as an
    advisor or consultant acting on behalf of Ms. Massey, the homeowner; and

i.  Conspirator Ernest Lewis acquired an interest in the Property while acting as a
    foreclosure consultant to Ms. Massey.

51.  Since Conspirator Ernest Lewis and his co-conspirators unlawfully deceived and
defrauded Ms. Massey of title to the Property, neither Millennium Bank, NA or any of its
assigns have any claims in equity against the Property and its claims lie solely against
Conspirator Ernest Lewis and its own agents.

52.  In the House obtains its business by relying on heavy marketing, advertising, and direct
solicitation by conspirator Michael K. Lewis. Through this marketing, the co-
conspirators offer a range of services to consumers like Ms. Massey who pay
membership fees. Such services include but are not limited to pre-paid legal services,

11

debt reduction services, and foreclosure rescue services under the pretext that they can help save consumer's homes from foreclosure.

53. With knowledge of the special lease-back arrangement and/or the docketed and open foreclosure action against the seller of certain properties, neither Millennium take sufficient steps to ensure that the purchaser and/or foreclosure rescue consultant involved in the transaction have complied with PHIFA.

54. Millennium's funding the foreclosure reconveyance of the Property is not entitled to protection as bona fide lenders since through its agents had knowledge of the circumstances of the transaction.

55. A person or lender of ordinary prudence would have inquired further as to Ms. Massey's equitable interest in the property given the facts known by its agents.

56. Millennium had knowledge of the circumstances upon which it should have inquired further to ensure Conspirator Ernest Lewis had complied with PHIFA.

57. Had Millennium's agents investigated further, both would have had even more notice of the facts of whether the foreclosure reconveyance complied with PHIFA.

58. An investigation of the true facts in the transaction was naturally suggested by the circumstances.

59. Millennium's interest in real property acquired by a foreclosure reconveyance in which was thus taken subject to Ms. Massey's interest in the property since it had a duty to investigate further and discover the true facts and neither performed any further investigation and instead turned a blind eye to what it knew.

12

60.    In reliance upon these false and misleading statements and omissions, Ms. Massey
       executed the operative documents requested by Millennium's agents, including but not
       limited to the HUD-1 Settlement Statement.

61.    On December 11, 2006 Conspirators Michael K. Lewis, on his own behalf individually
       and that of In the House, entered into a Consent Order with the U.S. Trustee for Region
       Four, the United States Bankruptcy Court for the Eastern District of Virginia, and certain
       other parties part of his scheme. *In Re.: Diana Beaman*, Case No. 03-77931
       (U.S.Bk.Ct.VA.).

62.    In the *Beaman* Consent Order, Conspirators Michael K. Lewis agreed to the
       following (which is also binding upon his agents, officers, servants, employees
       and attorneys and any and all persons with knowledge of the Consent Order):

       a.     To not accept compensation for acting as a bankruptcy petition preparers in the
              Eastern District of Virginia.

       b.     To not give any advice to any debtor about bankruptcy in the Eastern District of
              Virginia.

       c.     To not use In the House as a bankruptcy petition preparer in the Eastern District
              of Virginia.

       d.     To not accept compensation while engaging in the unauthorized practice of law.

63.    Upon information and belief, the *Beaman* Consent Order remains in effect as of this
       filing.

64.    Upon Information and belief, Michael K. Lewis, MKL Group, and , MKL/Starr
       Productions, Inc. was also enjoined by the United States Bankruptcy Court for the
       District of Columbia on November 25, 1998 from preparing for filing or assisting

13

in preparation for filing a petition or any other document by a debtor in that or any

other court in connection with a case under Title 11 of the United States Code.

### COUNT I: CONSUMER PROTECTION – VIOLATION OF PROTECTION OF HOMEOWNERS IN FORECLOSURE ACT (PHIFA) (MD. CODE ANN., REAL PROP., §§ 7-301 *et seq.*) (All Defendants)

65.   Plaintiffs reallege and incorporate by reference the allegations set out in the foregoing

   Paragraphs, and further allege:

66.   The acts and representations of the Defendants described above deceived and tended to

   deceive the Plaintiff, consumer homeowners, pursuant to the PHIFA and violated several

   express prohibitions of the PHIFA. These false representations and violations of the

   Plaintiff include, but are not limited to, the following:

   a.   that Conspirators Ernest Lewis, Michael K. Lewis, and In the House Technologies

       Inc. offered to help save the Plaintiff's home from Foreclosure;

   b.   that the papers and contracts the Plaintiff signed were to help save her home;

   c.   that the Plaintiff needed to sign a lease of her own properties in connection with

       their foreclosure rescue;

   d.   that Conspirators Ernest Lewis, Michael K. Lewis, and In the House Technologies

       Inc. failed to consider the Plaintiff's reasonable ability to pay the terms of the

       lease and proposed repurchase price within the term of the option to repurchase;

   e.   that Conspirators Ernest Lewis, Michael K. Lewis, and In the House Technologies

       Inc. failed to complete the formal settlement of the Plaintiff's home and property

       before transferring interest was affected;

   f.   that Conspirators Ernest Lewis, Michael K. Lewis, and In the House Technologies

       Inc. failed to provide statutory disclosures and copies of all agreements and

14

contracts from the Plaintiff;

g.  that Conspirators Ernest Lewis, Michael K. Lewis, and In the House Technologies Inc. concealed the true intent from the Plaintiff;

h.  that Conspirators Ernest Lewis, Michael K. Lewis, and In the House Technologies Inc. held themselves or their agents out as an advisor or consultant acting on behalf of the Plaintiff;

i.  that Conspirators Ernest Lewis, Michael K. Lewis, and In the House Technologies Inc. requiring unfair and unreasonable lease terms as part of the foreclosure reconveyance with the Plaintiff;

j.  that Millennium Bank, NA's agents provided bona fide services as part of the Plaintiff's foreclosure reconveyances;

k.  that Millennium Bank, NA upon notice by its agents that the Plaintiff was selling the Property in a foreclosure reconveyance, failed to make any further reasonable inquiries to determine whether purchaser complied with the Protection of Homeowners in Foreclosure Act;

l.  that the negligent acts of the agents of Millennium Bank, NA to fail inquire further about the true facts may be imputed their principal mortgage lender in the Plaintiff's foreclosure reconveyance transaction with Conspirators Ernest Lewis.

67.  The acts of the Defendants have caused damages to the Plaintiff by their unfair or deceptive practices including actions prohibited by the PHIFA through the unlawful loss of the equity in their homes, illegal fees and rents paid by the Plaintiff, and other costs.

WHEREFORE, Plaintiff prays that:

A.  The Court award Plaintiff $250,000.00 in compensatory damages; and

15

B.     Pursuant to PHIFA, the Court award Plaintiff an amount equal to up to three times

the amount of any and all payments and/or lost equity sustained by the Plaintiff.

C.     The Court award interest, costs, and attorney's fees; and

D.     The Court award such other and further relief as the nature of this case may

require.

## COUNT II—VIOLATION OF THE
## MARYLAND CONSUMER PROTECTION ACT (MCPA)
### (MD. CODE ANN., COM. LAW, §§ 13-101 — 13-501)
### (All Defendants)

68.     The Plaintiff reallege and adopt by reference the allegations contained in the foregoing

paragraphs, and further allege.

69.     The Consumer Protection Act defines unfair or deceptive trade practices to include, inter

alia, the following:

a.     False or misleading oral or written statements that have the capacity,

tendency, or effect of deceiving or misleading consumers;

b.     Failure to state a material fact if the failure deceives or tends to deceive;

and

c.     Deception, fraud, misrepresentation or knowing concealment, suppression

or omission of any material fact concerning the sale of consumer realty or the

extension of consumer credit, with the intent that the consumer rely on the

deception, fraud, misrepresentation or knowing concealment, suppression or

omission of the material fact.

70.     The omissions, acts, and representations of the Defendants, merchants, described above

deceived and tended to deceive consumers including the Plaintiff.

71.     The false representations as well as the unfair or deceptive practices of the Defendants

16

include, but are not limited to, the following which were within there sole discretion and control:

a.     that each of Defendants failed to comply with the Protection of Homeowners in Foreclosure Act concerning the Plaintiff and such violation is a per se violation of the MCPA;

b.     that Defendants concealed the arrangement between them and extracting additional and illegal fees for themselves at the expense of the Plaintiff in violation of Maryland law; and

c.     that Defendants incited, encouraged and aided and abetted others receipt of funds in connection with foreclosure rescue conveyances.

72.     The failure to comply with the provisions of the various acts governing the Plaintiff was deceptive or unfair acts within the meaning of the Maryland Consumer Protection Act. Defendants engaged in the suppression and omission of material facts, identified herein, that had the capacity, tendency or effect of deceiving or misleading the Plaintiff and that did in fact deceive or mislead Plaintiff causing Plaintiff injury and loss.

73.     The acts of the Defendants have caused damage to the Plaintiff through the unlawful loss their equity, illegal fees, and rents paid to the Defendants.

WHEREFORE, the Plaintiff respectfully requests this Court for an Order:

A.   Awarding Compensatory damages of $250,000.00 to the Plaintiff; and Awarding the Plaintiff their interest, costs, and reasonable attorney fees pursuant to; and

B.   For such other relief as the Court may find reasonable and necessary.

## COUNT III – FRAUD
**(All Defendants)**

17

74.  Plaintiff realleges and incorporate by reference the allegations set out in the foregoing
     Paragraphs, and further allege:

75.  Agents or employees of the Defendants intentionally and knowingly made the false and
     misleading representations and omissions alleged herein, including but not limited to
     those set forth herein, regarding the terms and conditions applicable to Plaintiff's
     foreclosure reconveyance transaction, intending that Plaintiff reasonably rely upon the
     false and misleading representations and omissions to her detriment, which she did.

76.  Defendant's conduct was malicious and with the specific intent to harm the Plaintiff.

77.  As a direct and proximate result of the fraudulent statements, representations and
     omissions, Plaintiff were induced, ab initio, to enter into a foreclosure reconveyance
     transaction with Defendant Foreclosure Rescue Consultants who did not intend to save
     the Plaintiff's home from foreclosure.

     WHEREFORE, Plaintiff prays that:

     A.  The Court award Plaintiff compensatory damages of $250,000.00;

     B.  The Court award punitive damages of $750,000.00; and

     C.  The Court award Plaintiff such other and further relief as the Court may deem just
         and proper.

### COUNT IV -- CIVIL CONSPIRACY
### (All Defendants)

78.  Plaintiff realleges and incorporate by reference the allegations set out in the foregoing
     Paragraphs, and allege further:

79.  The Defendants conspired with each other by common agreement or understanding, for:
     (a) the unlawful purpose of depriving Plaintiff of her rights under the statutory provisions

18

and common law, as alleged herein; and (b) the purpose of unlawfully depriving Plaintiff of both their money and property.

80.     The Defendants, acting with each other, did unlawfully deprive Plaintiff of both her money and property and the rights alleged herein by the overt acts alleged herein, all of which were performed to advance the conspiracy.

81.     In furtherance of said conspiracy, the Defendants both individually and in concert committed the overt acts or omissions alleged herein, to the economic loss and injury of Plaintiff.

82.     Defendant's conduct was malicious and with the specific intent to harm the Plaintiff.

83.     The acts and omissions of the Defendants caused injury and loss to Plaintiff.

WHEREFORE, Plaintiff prays that:

A.  The Court award Plaintiff compensatory damages of $250,000.00;

B.  The Court award punitive damages of $750,000.00; and

C.  The Court award Plaintiff reasonable costs and attorney's fees; and,

D.  The Court award Plaintiff such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Phillip R. Robinson
Michael Morin
CIVIL JUSTICE, INC.
520 West Fayette Street, Suite 410
Baltimore, Maryland 21201
(410) 706-0174

19

Scott Borison
Legg Law Firm, LLC.
5500 Buckeystown Pike
Fredcrick MD 21703
(301) 620-1016


Attorneys for Plaintiffs


## Request for Jury Trial

Plaintiffs demand a trial by jury on all causes of action set forth herein.

_____
Phillip Robinson