**IN THE UNITED STATES DISTRICT COURT FOR MARYLAND**
**(Northern Division)**

TERRY MASSEY *

Plaintiff *

v. * Case No.: 1-08-cv-00261

ERNEST LEWIS, et al. *

Defendants *

* * * * * * * * * * *

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS EARNEST LEWIS, MICHAEL K. LEWIS, IN THE HOUSE TECHNOLOGIES INC., CHERYL BROOKE, CORNERSTONE TITLE & SEAN ADETULA**

Plaintiff Terry Massey ("Ms. Massey"), by the undersigned counsel, submits this Motion for Partial Summary Judgment Against Defendants Earnest Lewis ("E. Lewis"), Michael K. Lewis ("M. Lewis"), In the House Technologies Inc. ("In the House"), Cheryl Brooke ("Brooke"), Cornerstone Title & Escrow ('Cornerstone"), and Sean Adetula. Specifically, Ms. Massey seeks a judgment as a matter of law that (1) declares, pursuant to Count V (pages 72-76) of her second amended complaint, that the Deed from her to E. Lewis as void *ab initio*; and (2) finds, pursuant to Count IV (pages 67-71) of her second amended complaint that Defendants E. Lewis, M. Lewis, In the House, Brooke, Adetula, and Cornerstone are liable to Ms. Massey for damages, to be determined at trial, pursuant to the Protection of Homeowners in Foreclosure Act ("PHIFA") Protection of Homeowners in Foreclosure Act ("PHIFA"), MD. CODE ANN. REAL PROP. § 7-301 et seq.

(LexisNexis 2003 & Supp. 2006).[1] In support of her Motion, Ms. Massey says:

## STATEMENT OF THE CASE

This case arises from a widespread and organized foreclosure rescue scam, designed to steal thousands of dollars in equity from Ms. Massey and which was successful in doing so. Judge Messitte of the U.S. District Court of Maryland described how this kind of scam works in the recent case of *Johnson v. Wheeler,* as follows:

> As home mortgage foreclosures have increased in recent years, so have so-called “foreclosure rescue scams.” Typically, a homeowner facing foreclosure is identified by a rescuer through foreclosure notices published in the newspapers or at government offices. The rescuer contacts the homeowner by phone, personal visit, card or flyer, and offers to stop the foreclosure by promising a fresh start through a variety of devices. As the date for the foreclosure approaches and the urgency of the matter becomes greater, the rescuer or some entity with which he is linked agrees to arrange for the pay-off of the mortgage indebtedness and to see to the transfer of title to the property to an investor pre-arranged by the rescuer, often with a leaseback of the property to the homeowner for a period of time, occasionally giving him the right to repurchase the property after the lease ends. The rescuer imposes heavy fees or other charges for his services, in effect stripping some if not all of the homeowner's equity, and does all this with little or no advance notice to the homeowner, who is usually unrepresented by counsel.

492 F.Supp.2d 492, 495-96 (D.Md.,2007), *citing generally* Steve Tripoli & Elizabeth Renuart, National Consumer Law Center, Dreams Foreclosed: The Rampant Theft Of Americans' Homes Through Equity-Stripping Foreclosure “Rescue” Scams (2005) (available at: http://www.consumerlaw.org/news/ForeclosureReportFinal.pdf ) (last visited December 9, 2008).

---

[1] The Maryland General Assembly made amendments to PHIFA in 2008, however these amendments do not apply to the case at hand since the subject transaction occurred after the initial version of PHIFA became law in May 2005. For the benefit of the Court, hereinafter all PHIFA sections cited are taken from Md. Code Ann. Real Prop. § 7-301 *et seq*.(LexisNexis 2003 & Supp. 2006).

As a result of learning of the illegal nature of the scam to steal her property and equity, Ms. Massey has filed a Complaint seeking several claims for relief, including counts for declaratory relief and for damages pursuant to PHIFA. Specifically, in her Declaratory Judgment count, Ms. Massey asks the Court to enter a judgment declaring Ms. Massey as the absolute owner of the subject property commonly known as 4104 W. Coldspring Lane, Baltimore City, Maryland 21215 ("Property"). In her PHIFA count Ms. Massey seeks a judgment for compensatory and treble damages for certain violations of PHIFA. Defendants Earnest Lewis ("E. Lewis"), Michael K. Lewis ("M. Lewis"), In the House Technologies Inc. ("In the House"), and Cheryl Brooke ("Brooke") have answered the complaint. Defendant Cornerstone has not answered the complaint.

As shown below, there are no material facts in dispute regarding the limited issues subject to this Motion and Ms. Massey is entitled to Partial Summary Judgment as a matter of law. Judgment on these issues will also significantly narrow and focus the issues necessary for trial.

**STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

This matter has many interesting and relevent facts to the overall scheme of the Defendants to illegally acquire an interest in Ms. Massey's home and the Property. However, for purposes of this motion and the relief it seeks, only the following facts are material to questions presented to which there is no dispute:

1. Ms. Massey and Defendant E. Lewis claim to be the owners of the **Property.**

2. E. Lewis claims title by Deed from Ms. Massey to him. **PLAINTIFF'S EXHIBIT NO. 1.**

3. Ms. Massey claims title by her prior deed and by her rescission of the assignment of title to the Defendant E. Lewis pursuant to PHIFA. **PLAINTIFF'S EXHIBIT NO.s 2 & 3.**

4. On June 30, 2006, an order to docket or a petition to foreclose was filed in the Circuit Court for Baltimore City, case no. **24O06001515** against the **Property.** *See* **PLAINTIFF'S EXHIBIT NO. 4**.[2]

5. At all relevant times beginning on June 30, 2006, Defendants E. Lewis, M. Lewis, Brooke, In the House, and Cornerstone knew that Ms. Massey was facing a foreclosure on the **Property.** **PLAINTIFF'S EXHIBIT NO. 5, AFFIDAVIT ¶ 6.**

[2] Docket extract from *Futrovsky v. Massey., Case No.* 24O06001515.

Defendants E. Lewis,[3] M. Lewis,[4] Brooke,[5] and In the House[6] offered to help Ms. Massey save her house from foreclosure and in fact agreed to do so. **PLAINTIFF'S EXHIBIT NO. 5, AFFIDAVIT ¶ 7.** However, at not time did either Defendants E. Lewis, M. Lewis, Brooke, Adetula, or In the House Technologies ever provide Ms. Massey with any notices or written contracts that were required by PHIFA. **PLAINTIFF'S EXHIBIT NO. 5, AFFIDAVIT ¶ 8**. This purpose is not in dispute as stated in the words of M. Lewis himself: "We -- Earnest did not want the houses. That was -- I brought him into this because I said, "Earnest, you have excellent credit. This is something you can do to help the members." So we sat down

---

[3] **Plaintiff's Exhibit No. 6,** E. Lewis Dep. at 54-55 (Earnest Lewis freely acknowledged his role. "Q. All right. And in connection with this contract, did you also enter into other agreements with people who were selling real property? A. Yes. They were to lease it and then buy it back. Q. And was that -- I believe the document talks in terms of a mandatory buy-back; is that correct? A.Correct. Q. So it was the intent of each transaction that the person would eventually buy the house back? A. Yes").

[4] **Plaintiff's Exhibit No. 7,** M. Lewis Dep. at 56-57 ("Massey came in and -- you know, because she didn't want to lose her daddy's house, didn't -- when I threw the idea out that, you know, she could do this, 'I don't want to lose my daddy's' -- I said, 'Well, listen. Why don't you call Weinstock, Friedman and Friedman? Talk to them about how to stop this foreclosure, first and foremost.' She called them and then she called me and gave me the answer. And I said, 'Look, this' -- I told all of my members, including Massey, that I have a preparer that will do the bankruptcy for 50 percent less than what the attorneys charge. That's how the referral service came out. So whatever Weinstock, Friedman and Friedman would charge you to prepare the documents, I can get you a discount, if you are an MKL member, of 50 percent less. Take this over to Cheryl Brooke's office. She can do it for you, if you decide to do it").

[5] **Plaintiff's Exhibit No. 8,** Brooke Dep. at 7-8 (where Brooke described to Ms. Massey her role in filing the bankruptcy petitions to stop foreclosures: "Q. And what did she ask you about bankruptcy? A. Well, she said that she was losing her house. She had tried to refinance before and they turned her down. She got -- she didn't get approved. And I told her I don't give legal advice. She has talk to an attorney. Had she talked to an attorney. Does she know if a bankruptcy can stop her foreclosure").

[6] **Plaintiff's Exhibit No. 9,** In the House Corp. Dep. Of Cheryl Brooke at 45-46 (Where Cheryl Brooke explained the purpose of the Defendants' program to save Ms. Massey: "Because people could not get refinanced -- Terry was one of them. She could not get refinanced. She tried every way to keep her house and people were losing their houses. And they just, you know, were crying, and in tears, and everything else. And the pilot came up as trying to find a way to help these people. That's why I can't believe all of this. Q. All right. And what was his way of helping these people? A.Well, he was saying that we needed an -- you know, somebody, an investor that can do a lease back. I mean, it's done every day. And give them their -- that way, they keep their houses and they stay in their houses and not on the street").

individually with each member and told them what needed to be done for Earnest to do it." **PLAINTIFF'S EXHIBIT NO. 7,** M. Lewis Dep. at 34.

6. As part of there foreclosure rescue scheme, Defendants E. Lewis, M. Lewis, Brooke, and In the House did provide certain contracts including a Lease Back and Mandatory Repurchase Agreement. Defendant Earnest Lewis stated:

> Q. All right. And in connection with this contract, did you also enter into other agreements with people who were selling real property? A. Yes. They were to lease it and then buy it back. Q. And was that -- I believe the document talks in terms of a mandatory buy-back; is that correct? A. Correct. Q. So it was the intent of each transaction that the person would eventually buy the house back? A. Yes.

**PLAINTIFF'S EXHIBIT NO. 6**, E. Lewis Dep. at 46-48; *see also* **PLAINTIFF'S EXHIBIT NOS. 10 & 11.**

7. On or about July 31, 2006, at the direct and indirect instruction of Defendants Brooke, In the House, E. Lewis, and M. Lewis for the purpose of "saving the Property from foreclosure," Ms. Massey sought bankruptcy protection by filing a Chapter 13 bankruptcy petition filed with the assistance of Brooke and In the House. **PLAINTIFF'S EXHIBIT NO. 5, AFFIDAVIT ¶ 10; PLAINTIFF'S EXHIBIT NO. 12.**[7]

8. On or about September 13, 2006, Ms. Massey attended a real estate closing organized by Defendant Cornerstone wherein she assigned her interest in the **Property** on a temporary basis to E. Lewis. **PLAINTIFF'S EXHIBIT NO. 5, AFFIDAVIT ¶ 11.**

9. Cornerstone ad Adetula conducted this settlement despite the fact that the U.S. Bankruptcy Court of Maryland had not granted Ms. Massey or anyone else on her

[7] Docket extract from *In Re: Massey*, Case No. 06-14497.

behalf permission to convey her interests in the Property. **PLAINTIFF'S EXHIBIT NO. 12.** Cornerstone and Adetula also never asked Ms. Massey if she had received her mandatory PHIFA notices. **PLAINTIFF'S EXHIBIT NO. 5, AFFIDAVIT ¶ 13.**

10. Cornerstone prepared a false HUD-1 settlement statement for the September 13, 2006 transaction which indicated that Ms. Massey would receive $30,721.83. **PLAINTIFF'S EXHIBIT NO. 13.** In fact this sum was given weeks later by Cornerstone to M. Lewis and/or his associate and affiliate Winston Thomas of Carteret Mortgage—the mortgage broker in the transaction between E. Lewis and Ms. Massey. **PLAINTIFF'S EXHIBIT NO. 5, AFFIDAVIT ¶ 12.** The check was deposited into the account of In the House. **PLAINTIFF'S EXHIBIT NO. 8,** *Brooke Dep.* at 19-24. The funds were then disbursed to reimburse Earnest Lewis for any amounts he paid at settlement and the balance given to M. Lewis and E. Lewis. **PLAINTIFF'S EXHIBIT NO. 6,** E. *Lewis Dep.* at 63, ("Right. So when In The House Technologies reimbursed you, you put it back into that same account? A. Yes. Q. All right. And that was the same thing that you did on all the purchase transactions? A. Yes.").

11. Pursuant to PHIFA, Ms. Massey rescinded her transaction with E. Lewis on October 11, 2006 and recorded that rescission for notice to all potential parties in the land records of Baltimore City, Maryland. **PLAINTIFF'S EXHIBIT NO. 3.** Ms. Massey commenced this action on or about October 20, 2006. **PLAINTIFF'S EXHIBIT NO. 5, AFFIDAVIT ¶ 14.**

12. With notice of Ms. Massey's PHIFA rescission and this lawsuit, Cornerstone caused the rescinded deed, **PLAINTIFF'S EXHIBIT NO. 1,** and E. Lewis's fraudulent Deeds of Trust to be recorded in the land records of Baltimore City, Maryland

on December 21, 2006. **PLAINTIFF'S EXHIBITS NO. 14 & 15.**

13. As of the date of the alleged assignments of the **Property** from Ms. Massey to Defendant E. Lewis, a foreclosure action had been docketed against the **Property** and the **Property** was subject to the provisions of **PHIFA**.[8]

14. On or about September 13, 2006, Defendant E. Lewis encumbered the **Property** by Deeds of Trust and recorded the instrument in the land records of Baltimore City with the assistance of Cornerstone. **PLAINTIFF'S EXHIBITS NO. 14 & 15.**

15. As a closing agent for several different title insurers, Cornerstone knew about PHIFA and the strict requirements it placed upon it but utterly failed to comply with the basic law and therefore acted outside the scope of its license. **PLAINTIFF'S EXHIBIT NO. 16.**

16. Cornerstone knew before it recorded the instruments that the proceeds from the transaction had been paid to In the House and not Massey. **PLAINTIFF'S EXHIBIT NO. 17.**

17. Defendants E. Lewis, M. Lewis, Brooke, and In the House are foreclosure consultants as regards the **Property** and this transaction. Defendant E. Lewis is also a foreclosure purchaser as regards to the Property.[9]

## STANDARD OF REVIEW

Rule 56(c) of the *Federal Rules of Civil Procedure* provides that summary judgment should be granted where "the pleadings, depositions [and] answers to interrogatories ... show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." F.R.C.P. 56. The

[8] *See*, Real Prop., § 7-301(b), (d), (f), (i), and (j).

[9] *See*, argument below.

Supreme Court has construed Rule 56(c) "mandate the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, (1986). The Court explained that, "[i]n such situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Id.* at 323.; *see also Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 254 (1986).

## ARGUMENT

### I. THE DEED FROM MS. MASSEY TO E. LEWIS IS VOID *AB INITIO*

There are three separate legal reasons by which the Deed from Ms. Massey to E. Lewis is void as a matter of law: (i) E. Lewis illegally obtained title to the property while acting directly and indirectly as a foreclosure consultant; (ii) the deed was illegally recorded during Ms. Massey's period of PHIFA rescission; and (iii) the September 13, 2006 deed violated the automatic stay of Ms. Massey's Chapter 13 Bankruptcy.

#### *i. A Foreclosure Consultant May Not Pursuant to PHIFA Acquire Any Interest in a Property for Whom the Consultant Provides Direct or Indirect Services.*

The transparent ploy of using front businesses in furtherance of foreclosure rescue frauds is a well known and a traditional method of executing foreclosure rescue scams. This ploy was anticipated by the authors of PHIFA and addressed at Real Prop. § 7-307

> Prohibited actions. A foreclosure consultant may *not*: … (5) *Acquire any interest, directly or indirectly,* or by means of a *subsidiary, affiliate, or corporation in which the foreclosure consultant* or a member of the foreclosure consultant's immediate family *is a primary stockholder*, in a residence in foreclosure from a homeowner with whom the foreclosure consultant has contracted.

Md. Code Ann., Real Prop. § 7-307 (emphasis added).

In this case, E. Lewis' conduct directly and indirectly, through In the House, M. Lewis, and Brooke, established him as a foreclosure consultant. Md. Code Ann., Real Prop. § 7-301(b). First, E. Lewis contacted and solicited Ms. Massey with offers to save the Property from foreclosure. E. Lewis dealt directly with Ms. Massey throughout the transaction. E. Lewis and his affiliates then presented Ms. Massey with the opportunity to save the Property to the "pilot" project he had created with In the House, M. Lewis, and Brooke for the same purpose of "saving the Property from foreclosure." The scheme allowed Ms. Massey an opportunity to lease the property for a period of time and then repurchase it. E. Lewis, In the House, M. Lewis, and Brooke all freely admit their efforts for Ms. Massey would stop the pending foreclosure.

There is no dispute of material fact that E. Lewis acted as a foreclosure consultant directly and indirectly through his affiliates. There was no doubt then that he therefore acquired an illegal interest in the Property in violation of the express mandate of PHIFA. Md. Code Ann., Real Prop. § 7-307(5). A declaratory judgment confirming the Deed from Mr. & Mrs. Boyd to New Towne void was therefore appropriate and reasonable. To say otherwise would render Real Prop., § 7-307(5) meaningless.

Such a ruling that the deed was void is also entirely consistent with more than eighty years of case law starting with the Court of Appeals' ruling in *Bond v. May & City Council*, 118 Md. 158, 166 (1912) where it said:

> A mandatory provision in a statute is one the omission to follow which renders the proceedings to which it relates illegal and void; while a directory provision is one the observance of which is not necessary to the validity of the proceedings. Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the

> Legislature, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other…Mere words do not control. The whole surroundings, the purposes of the enactment, the ends to be accomplished, the consequences that might result from one meaning rather than another…must all be considered in determining whether particular words shall have mandatory or directory effect ascribed to them….And generally, when no rights will be impaired, provisions with no negative words or implications concerning the time and manner in which official persons shall perform designated acts are directory.

*Id.* (internal citations and quotations omitted).

*ii. The Deed Was Illegally Recorded in the Land Records of Baltimore City, Maryland.*

PHIFA contains clear prohibitions against the filing of a deed if the provisions of PHIFA have not been met. See (i) §§ 7-310(k) and § 7-311(b)(6)(i), which prohibit the recording of documents, including deeds and deeds of trust, affecting title to protected properties during the period of rescission; (ii) § 7-311(b)(6)(ii) which prohibits foreclosure purchasers from transferring or encumbering protected properties during the period of rescission; and (iii) § 7-307(5) which prohibits a foreclosure consultant from acquiring a direct or indirect interest in the protected property.

The interest claimed by E, Lewis is from the deed from Ms. Massey. This recorded deed is void under Maryland law since it was done in violation of the express prohibitions set forth in PHIFA. PHIFA does not just regulate foreclosure rescue transactions but it also prohibits certain conduct. For example, Real Prop., (i) §§ 7-310(k), 7-311(b)(6)(i), which prohibit the recording of documents, including deeds and deeds of trust, affecting title to protected properties during the period of rescission; (ii) Real Prop., § 7-311(b)(6)(ii), which prohibits foreclosure purchasers from transferring or

encumbering protected properties during the period of rescission; and (iii) Real Prop. § 7-307(5), which prohibits a foreclosure consultant from acquiring a direct or indirect interest in the protected property. Ms. Massey's position in this regard is also entirely consistent with Maryland law. *Bond v. May & City Council*, 118 Md. 158.

If the court affords protections to illegal acts, e.g., recording instruments in violation of the law, the issue of rescission under PHIFA still remains. There are a number of instruments, documents, disclosures, and notices addressed by PHIFA. One of these documents is the foreclosure consultant contract. A foreclosure consultant contract is defined at Real Prop., § 7-301(c): "Foreclosure consulting contract means a written, oral, or equitable agreement between a foreclosure consultant and a homeowner for the provision of any foreclosure consulting service or foreclosure reconveyance." Md. Code Ann., Real Prop. § 7-301(c).

There are different provisions within PHIFA for the rescission of a foreclosure consultant contract and a foreclosure reconveyance. The language of Real Prop., § 7-305 regarding the homeowners' right to rescind a foreclosure consultant contract is clear and unambiguous: "(a) In addition to any other right under law to cancel or rescind a contract, a homeowner has the right to: (1) Rescind a foreclosure consulting contract at any time; … (b) Rescission occurs when the homeowner gives written notice of rescission to the foreclosure consultant … ." Md. Code Ann., Real Prop. § 7-305.

Unlike the common law, PHIFA provides that a homeowner entitled to its protections does not have to elect between the remedy of rescission or damages. As described above, homeowners entitled to the protections of PHIFA have the absolute

right to rescind any transaction. In addition to and not in lieu of this right, homeowners also have the right to seek damages, including treble damages for willful and knowing conduct. Md. Code Ann., Real Prop. § 7-320.

In this case, the uncontroverted evidence in the lower court was that Ms. Massey had the absolute right to rescind the foreclosure reconveyance at any time because E. Lewis and his affiliates, In the House, M. Lewis, and Brooke, never gave Ms. Massey the required statutory notices. Md. Code Ann., Real Prop. § 7-310(e).[10] The period of time to rescind a foreclosure reconveyance does not commence until after the homeowner receives a number of mandatory notices and disclosures to insure the homeowner is given at least some hint of her rights. *Id.*

Pursuant to PHIFA, Ms. Massey lawfully rescinded her foreclosure reconveyance and recorded the Statutory Rescission in the land records for Baltimore City on October 11, 2006, so that notice was effective on every interested party.

If the expressly prohibited act recordation of the Deed during Ms. Massey's period of rescission was void *ab initio*, then E. Lewis could not obtain any legal interest in the subject property.

*iii. The Deed from Ms. Massey to E. Lewis Violated the Automatic Stay*

Massey was in bankruptcy at the time of the transfer. Upon filing the bankruptcy, the automatic stay under 11 U.S.C. § 362 became effective. Without the automatic stay, there would be nothing to prevent debtors and the Bankruptcy court, to preserve the

[10] "The time during which the homeowner may rescind the contract or transfer does not begin to run until the foreclosure purchaser has complied with this section."

status quo and allow debtors like Ms. Massey from seeking a fresh start with respect to their property after the petition is filed. *Id.* at 370.

The bankruptcy courts of the U.S. District Court of Maryland have long held "to the general rule that violations of the bankruptcy stay are void…[and] the automatic stay being a bedrock policy upon which the Code is built and a fundamental debtor protection of the bankruptcy law." *In re Lampkin*, 116 B.R. 450, 453 (1990) (internal citations omitted). *See also In re Miller*, 10 B.R. 778 (BC Md. 1981), aff's 22 B.R. 479 (D.MD 1982); *Anglemeyer v. Unided States*, 115 B.R. 510 (D.Md 1990).

*In re Lampkin* involved a request of a creditor to reopen a dismissed bankruptcy case in order to seek relief from the automatic stay *nunc pro tunc*. *In re Lampkin,* 116 B.R. at 451. With apparent notice of the debtor's bankruptcy petition and the automatic stay, the creditor carried out a foreclosure sale and subsequently requested the state court to ratify the foreclosure sale. *Id.* Apparently after the fact that it had acquired title to the debtor's property from the state court, did the creditor seek relief from the automatic stay of the debtor's bankruptcy.

Judge Mannes denied the creditor's request and further explained the public policy rationale behind the automatic stay. "The stay is the ship upon which debtors embark on their fresh start…Although this may punish innocent parties, the Code allows no other solution. The cost is relatively small for the comfort required by those who seek to insure the title of property such as that at issue here. To rule otherwise rewards violation of the stay." *Id.* at 453. Other courts across the country in the "First, Second, Third, Sixth, Ninth, Tenth, and Eleventh Circuits [also] believe that violations of the stay are void *ab initio.*" *Id.* at 453.

The execution of the deed from Ms. Massey while in bankruptcy without the permission the bankruptcy court, was void as matter of law and provided further evidence that E. Lewis could not obtain any legal interest in the subject property.

## II. Defendants E. Lewis, M. Lewis, In the House, Brooke, Adetula, and Cornerstone are Liable as a Matter of Law to Ms. Massey for Damages Pursuant to PHIFA

PHIFA allows a homeowner, like Ms. Massey, entitled to its protections to "bring an action for damages incurred as the result of a practice prohibited by [the statute]." Md. Code Ann., Real Prop. § 7-320(a). As described herein, there is no dispute of material fact that each of the Defendants identified in this Motion violated PHIFA. While it may be necessary at trial for the purposes of determining whether the Defendants' conduct was willful or knowing, for purposes of the Court determining liability there only needs to be just one violation of PHIFA by the Defendants. However, as demonstrated above, the defendants subject to this motion have several different violations upon which they are liable as a matter of law. These include:

*i.* *<u>E. Lewis' PHIFA Violations:</u>*
- Acted as a foreclosure consultant and purchaser in violation of § 7-307(5).
- Did not provide Ms. Massey with mandatory rescission notices in violation of §7-306 & 7-310.

*ii.* *<u>M. Lewis' PHIFA Violations:</u>*
- Did not provide Ms. Massey with mandatory rescission notices in violation of §7-306.

*iii.* *<u>Brooke's PHIFA Violations:</u>*
- Did not provide Ms. Massey with mandatory rescission notices in violation of §7-306.

*iv.* *<u>In the House's PHIFA Violations:</u>*

- Did not provide Ms. Massey with mandatory rescission notices in violation of §7-306.

*v.* *<u>Adetula's PHIFA Violations:</u>*

- Conducted September 13, 2006 settlement in violation of PHIFA by aiding conveyance to E. Lewis while acting as a foreclosure consultant and purchaser in violation of § 7-307(5).
- Conducted September 13, 2006 settlement in violation of PHIFA by aiding conveyance from E. Lewis to third party lenders during Ms. Massey's period of rescission in violation of § 311(b)(6)(ii).
- Recorded the Deed from Ms. Massey to E. Lewis after he had notice that the Deed had been rescinded in violation of §§ 7-310(k) and 7-311(b)(6)(i).
- Recorded the Deeds of Trust from E. Lewis to lenders after he had notice that the Deed had been rescinded in violation of §§ 7-310(k) and 7-311(b)(6)(i).

*vi.* *<u>Cornerstone's PHIFA Violations:</u>*

- Conducted September 13, 2006 settlement in violation of PHIFA by aiding conveyance to E. Lewis while acting as a foreclosure consultant and purchaser in violation of § 7-307(5).
- Conducted September 13, 2006 settlement in violation of PHIFA by aiding conveyance from E. Lewis to third party lenders during Ms. Massey's period of rescission in violation of § 311(b)(6)(ii).
- Recorded the Deed from Ms. Massey to E. Lewis after he had notice that the Deed had been rescinded in violation of §§ 7-310(k) and 7-311(b)(6)(i).
- Recorded the Deeds of Trust from E. Lewis to lenders after he had notice that the Deed had been rescinded in violation of §§ 7-310(k) and 7-311(b)(6)(i).

## CONCLUSION

Based on the foregoing, Ms. Massey respectfully requests the Court enter partial summary judgment. Specifically, Ms. Massey seeks a judgment as a matter of law that (1) declares, pursuant to Count V of her second amended complaint, that the Deed from her to E. Lewis as void *ab initio* for the reasons stated herein; and (2) finds, pursuant to Count IV (of her second amended complaint) that Defendants E. Lewis, M. Lewis, In the

House, Brooke, Adetula, and Cornerstone violated PHIFA and are liable to Ms. Massey for damages, to be determined at trial as allowed by PHIFA.

Respectfully submitted,

*/s/ Phillip R. Robinson*
Phillip R. Robinson, Esquire
Civil Justice, Inc.
520 West Fayette Street
Suite 410
Baltimore, MD 21201
Phone: (410) 706-3196
probinson@civiljusticenetwork.org

*/s/ Scott C. Borison*
Scott C. Borison, Esquire
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, MD 21703
Phone: (301) 620-1016
Fax: (301) 620-1018
borison@legglaw.com

*Attorneys for Terry Massey*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on this 9th day of December, 2008, a copy of the foregoing was served via this Court's ECF system and/or first-class mail, postage prepaid, upon:

William J. Hickey, Esquire
Robert M. Gittins, Esquire
Law Offices of William J. Hickey, LLC
33 Wood Lane
Rockville, MD 20850
*Attorneys for Cornerstone Title & Escrow, Inc. and Adetula*

I HEREBY FURTHER CERTIFY, that on this 9th day of December, 2008, a copy of the foregoing was served via US Mail, postage prepaid, upon the following pro se defendants:

In the House Technologies
Michael K. Lewis
Earnest Lewis
Cheryl Lynn Brooke
415 Ashaway Lane
Upper Marlboro, MD 20774

______//s//Phillip Robinson___________________
Phillip Robinson

**Table of Exhibits**

| **Exhibit Number** | **Description** |
|---|---|
| 1. | Massey Deed to E. Lewis |
| 2. | Massey's Prior Deed |
| 3. | Massey's PHIFA Rescission |
| 4. | Massey Foreclosure Docket |
| 5. | Massey Affidavit |
| 6. | E. Lewis Deposition Excerpts |
| 7. | M. Lewis Deposition Excerpts |
| 8. | Brooke Deposition Excerpts |
| 9. | In the House Corporate Designee Deposition Excerpts |
| 10. | Massey Mandatory Lease Back and Mandatory Repurchase Agreement |
| 11. | Massey Sales Contract |
| 12. | Massey Bankruptcy Docket |
| 13. | HUD-1 Settlement Statement |
| 14. | E. Lewis DOT 1 |
| 15. | E. Lewis DOT 2 |
| 16. | Security Title Bulletin for PHIFA |
| 17. | Cornerstone Check endorsed to In the House |