IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRY MASSEY, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIV. NO. AMD 08-261 |
| | : | |
| ERNEST LEWIS, et al., | : | |
| Defendants | : | |

...o0o...

MEMORANDUM OPINION and ORDER

Plaintiff Terry Massey ("Massey") filed this action in the Circuit Court for Baltimore City seeking equitable relief and damages in asserting claims under federal and state law arising out of her efforts to avoid the foreclosure of the mortgage on her home. Certain defendants removed the action to this court. Plaintiff's claims are brought against the following defendants: Michael Lewis ("M. Lewis"), Ernest Lewis ("E. Lewis"), Cheryl Brooke ("Brooke"), In the House Technologies, Inc. ("In the House"), Sean Adetula ("Adetula"), Cornerstone Title and Escrow, Inc. ("Cornerstone"), and Carteret Mortgage Company ("Carteret"). Now before the court is plaintiff's motion for partial summary judgment as to her claims under the Maryland Protection of Homeowners in Foreclosure Act, Md. Code Ann., Real Prop. §7-301, et seq. (2005 & Supp. 2006) ("PHIFA"). Only defendants Adetula and Cornerstone have filed responses to the plaintiff's motion and a hearing has been held. For the reasons stated in this opinion, the motion for partial summary judgment shall be granted.

I.

When the events underlying the amended complaint occurred, M. Lewis ran the "MKL African-American Business Network" ("the Network"). The Network was an enterprise that purported to help Maryland consumers facing foreclosure. Using television and radio advertisements and flyers, M. Lewis and his wife Brooke marketed their foreclosure rescue business through their corporation, In the House.

On June 30, 2006, a foreclosure action was filed against Massey's home for an unpaid mortgage debt of $109,902.08. Massey learned about the Network and contacted M. Lewis. She met with him and enrolled in his "MKL Financial Diet," agreeing to pay a monthly membership fee, attend bi-weekly budget sessions, and apply to refinance her mortgage with Carteret.

M. Lewis and Brooke arranged for Massey to avoid the loss of her home by transferring the Property to M. Lewis' brother, E. Lewis. The plan required Massey to sell her home to E. Lewis who, with his good credit history, would secure a new, lower-rate mortgage on the Property in his name. Massey would remain in her home as a "tenant" and send "rent" checks to E. Lewis to cover the new mortgage payments. Through this scheme, E. Lewis effectively "loaned" his good credit to Massey.

Massey cooperated with the scheme, believing (or at least, hoping) that the title transfer was temporary and that she would eventually be able to repurchase her home. Defendants drew up contracts for the sale and lease-back of the Property with an option to repurchase, which Massey signed on July 13, 2006. Massey denies she ever received copies

of any of the signed contracts. Notably, the contracts also did not include language explaining the homeowner's right to rescind, nor were rescission notices attached.

M. Lewis suggested that Massey investigate filing for bankruptcy in order to stall the ongoing foreclosure action. Massey complied and defendants helped her file a Chapter 13 petition in the bankruptcy court on July 31, 2006. On September 13, 2006, with the bankruptcy case still open, Massey went to Cornerstone for settlement, which was conducted by Adetula. She signed the deed and other documents, including the HUD-1, to transfer the Property to E. Lewis for $159,900.00. E. Lewis obtained two mortgage loans to cover the purchase price of Massey's home.

After settlement, Adetula did not disburse the full amount of the proceeds from the sale. Specifically, the HUD-1 form indicated that Massey would receive $30,721.83 but the escrow check from Cornerstone, which was issued some time later (after the bankruptcy case had been dismissed) totaled only $29,356.33. Additionally, Massey never received the check at all; M. Lewis brought it to Massey at her place of employment and told her she could keep the check and move out of her house or she could endorse the check payable to his brother and stay in the house. Massey endorsed the check and, apparently, all of the proceeds were collected by defendants.

On October 11, 2006, Massey signed the paperwork cancelling the conveyance of her home to E. Lewis and timely filed the rescission notice in the Baltimore City land records.[1]

[1]Md. Code Ann., Real Prop. §7-306(e) states: "The time during which the homeowner may rescind the contract does not begin to run until the foreclosure consultant has complied with this section," which includes (1) providing the homeowner with signed and dated copies of contracts providing foreclosure consulting service or foreclosure reconveyance and (2) attaching a Notice of Rescission immediately upon execution of such contracts. Plaintiff received neither signed and dated copies of her contracts nor a notice of right to rescind.

The following month, Massey filed this action against E. Lewis, M. Lewis, Brooke and In the House. In December 2006, Massey learned that Cornerstone had recorded the deed to the Property in the Baltimore City land records and thereupon joined it and Adetula as defendants.

II.

Massey seeks judgment as a matter of law on two issues: (1) whether the deed granting E. Lewis title to her home should be voided; and (2) whether defendants are liable under PHIFA.

A.

No party in interest opposes the first issue presented by plaintiff's motion for summary judgment, i.e., the validity of the deed of conveyance from Massey to E. Lewis. For the reasons alleged and supported with admissible evidence by plaintiff in her motion, and as described briefly above and below, Massey's request to void the deed shall be granted and an appropriate order shall issue declaring that she retains title to the Property.

B.

Only Adetula and Cornerstone filed a response to the second issue presented by Massey's motion. They contend that PHIFA does not apply to them and that, even were PHIFA to apply, they cannot be held liable because they had no knowledge that they presided over a foreclosure reconveyance. For Adetula and Cornerstone to avoid summary judgment, they must generate a genuine dispute of material fact. Fed.R.Civ.P. 56(c). They have failed to do so.

1.

Cornerstone and Adetula argue that they are exempt from PHIFA because they are licensed settlement agents. Although PHIFA does have an exception for licensed settlement agents, it only applies to title insurance producers "acting in accordance with the person's license." Md. Code Ann., Real Prop. §7-302(a)(6). Thus, those performing services *not* in accordance with their license are not entitled to an exemption from PHIFA.

Cornerstone and Adetula performed services beyond the scope of their license when they misappropriated funds. The HUD-1 settlement sheet showed that Massey was owed $1,365.50 more than the amount for which the escrow check was ultimately issued. Massey received no notice or explanation regarding this discrepancy. Massey did not give defendants oral or written permission to withhold the $1,365.50. In fact, as was made clear at the hearing on the motion, after more than two years of litigation, defendants still cannot explain why Massey did not receive the full amount of the settlement proceeds.

In keeping with Judge Titus' previous observation, the PHIFA exemption for title and settlement companies does not extend to misappropriation of funds: defendants have a license to provide title insurance and settlement services, "not a license to steal."[2] In this case, Adetula and Cornerstone acted outside their license and therefore may not claim exemption from PHIFA.

2.

[2] *See* Tr. of Mot. Hr'g. 12/6/07, *Melvin Proctor, Jr. et al. v. Metropolitan Money Store, Inc. et al*, (No. RWT-07-1957 D.Md.) at 105.

Next, Cornerstone and Adetula argue that, even were PHIFA to apply to their activities in this case, they are not liable because their activity does not qualify as the type of "foreclosure consultant" service PHIFA regulates. Under PHIFA, foreclosure consultants must obey PHIFA's statutory requirements. A foreclosure consultant is anyone who arranges "for the homeowner to become a lessee or renter entitled to continue to reside in the homeowner's residence;" arranges "for the homeowner to have an option to repurchase the homeowner's residence;" or engages "in any documentation, grant, conveyance, sale, lease, trust, or gift by which the homeowner clogs the homeowner's equity of redemption in the homeowner's residence." Md. Code Ann., Real Prop. §7-301(b)(1). Foreclosure consultants may not induce, or attempt to induce, any homeowner to enter into a foreclosure consulting contract that does not comply in all respects with the law. Md. Code Ann., Real Prop. §7-307. PHIFA gives homeowners the right to bring an action for damages "incurred as the result of a practice prohibited by this sub-title." Md. Code Ann., Real Prop. §7-320(a). "If the court finds that the defendant willfully or knowingly violated this subtitle, the court may award damages equal to three times the amount of actual damages." Md. Code Ann., Real Prop. §7-320(c).

As a matter of law in the light of this record, Adetula and Cornerstone are deemed "foreclosure consultants" because they provided the settlement services for a foreclosure reconveyance. They arranged for Massey to become a lessee residing in her home with an option to repurchase and they helped create documentation that "clogged" Massey's equity of redemption in her own home.

Adetula and Cornerstone argue that they cannot be deemed "foreclosure consultants" as a matter of law because, at a minimum, a reasonable juror might reasonably find that they had no knowledge that the property transfer was a "foreclosure reconveyance." This assertion is simply and fatally undermined by the evidence before the court in the summary judgment record. First, Adetula and Cornerstone ordered a title abstract search and provided a title examination. It can be and must be inferred that they looked at the title work because they admit they were aware of the open bankruptcy case. Even a cursory glance at title work would show the open foreclosure proceeding on the Property.

Second, Adetula's own affidavit shows he asked Massey to provide a new address for him to write onto the pre-prepared HUD-1 form, a strange request to make in the middle of a settlement. At the very least, Massey's failure to provide an address before settlement should have tipped off Adetula that he was presiding over a foreclosure lease-back arrangement. Far worse, there is the suggestion that Adetula made his request for an address in order to induce Massey into going forward with an illegal foreclosure reconveyance.

At bottom, a reasonable juror would necessarily find under the circumstances here that Adetula and Cornerstone violated PHIFA by inducing, or attempting to induce, Massey into an illegal foreclosure consulting contract that did not comply with Maryland law. Massey received no copies of the documents she signed and none of the documents contained the necessary notices.

Finally, even had Cornerstone and Adetula been unaware of their role in a foreclosure reconveyance, they still violated PHIFA when they recorded the rescinded deed and

accompanying mortgages.[3] Thus, by acting as foreclosure consultants in violation of PHIFA, Adetula and Cornerstone are jointly and severally liable for any damages Massey incurred as a result of the settlement services they provided.

III.

For the reasons set forth above, plaintiff's motion for partial summary judgment is GRANTED and appropriate Orders carrying into effect the above determinations shall be submitted by counsel for plaintiff.

February 24, 2009

/s/
André M. Davis
United States District Judge

[3] *See supra* note 1.